[No. 3538.   Decided January 11, 1901.]

A. F. McCLAINE, *Appellant,* v. SOLOMON FAIRCHILD, *Administrator of the Estate of John Saltar, Deceased, Respondent.*

PLEADING—AMENDING DEMURRER TO PLEAD LIMITATION OF ACTION —DISCRETION OF COURT.

The action of the court in allowing defendant to withdraw his demurrer and interpose a second one setting up the additional ground that the action was barred by the statute of limitations was within the discretion vested in the court, under the statute authorizing amendments in furtherance of justice.

LIMITATION OF ACTIONS—SUBSCRIPTION—ACCRUAL OF RIGHT OF ACTION.

Where subscriptions to aid in the construction of a railway were made to trustees on condition that promissory notes or deeds to real estate should be executed and delivered to the trustees whenever any company should be secured to construct the railway, and should be placed in the hands of the trustees with the understanding that one half of the total should be paid over by the trustees when the railway was graded and the ties and iron laid, and the balance should be delivered when the first train was run over the entire line, a right of action on such subscriptions accrued upon the completion of the railway and the operation of trains thereon; and where the subscriber had an option to pay in money or real estate, his election was necessary as soon after performance of the conditions of the contract as he had notice thereof, and the statute would begin running from the date of such notice or demand upon him, whether or not he had exercised the election given by his option.

Appeal from Superior Court, Pierce County.—Hon. JAMES A. WILLIAMSON, Judge. Affirmed.

*T. O. Abbott,* for appellant:

In optional contracts, where the time of election is uncertain and indefinite, the party reserving the option must exercise his right within a reasonable time, otherwise the right passes to the other party. *Norris v. Harris,* 15 Cal. 258; *Schroeder v. Gemeinder,* 10 Nev. 361. Where no time is fixed in the contract for the performance of the condition, and the party has been put in default, the contract may still be performed within a reasonable time. *Woods v. Dial,* 12 Ill. 72; *Wear v. Jacksonville & S. R. R. Co.,* 24 Ill. 593; *Hoffman v. Bloomsburg & S. R. R. Co.,* 27 Atl. 567; *Gilbert v. Danforth,* 6 N. Y. 588; *Roberts v. Beatty,* 21 Am. Dec. 420. As long as plaintiff was satisfied to wait upon defendant to choose between his privileges, no one but the plaintiff could be injured thereby, and the defendant cannot complain that

the demand was unreasonably delayed. Wood, Limitation of Actions, 267; *Scherr v. Little,* 60 Cal., 616; *Calanchini v. Branstetter,* 84 Cal., 254; *Groesbeck v. Bell,* 1 Utah, 338; *Emmons v. Hayward,* 6 Cush. 501; *Sims v. Everhardt,* 102 U. S. 300 (26 L. ed. 87).

*Fred H. Murray,* for respondent:

The law upon option of payment in money or property is uniform and settled to the effect that the promisor has option only prior to the time debt is due, and that immediately upon default an action in assumpsit would lie for recovery of money. *Plummer v. Keaton,* 17 Tenn. 27; *Wolfe v. Parham,* 18 Ala. 441; *Smith v. Falwell,* 21 Tex. 467; *Short v. Abernathy,* 42 Tex. 94; *Peck v. Hubbard,* 11 Vt. 612; *Baker v. Todd,* 6 Tex. 273 (55 Am. Dec. 775); *Russell v. McCormick,* 45 Ala. 587 (6 Am. Rep. 707).

What is a reasonable time depends upon the nature and character of the thing to be done, the circumstances of the case, and the difficulties attending its accomplishment. *Hart v. Bullion,* 48 Tex. 278; *Blackwell v. Fosters,* 58 Ky. 88. What is a reasonable time, when a contract is silent on the subject, is a question of law for the court. *Attwood v. Clark,* 2 Greenl. 249; *Ballom v. Moore,* 14 Daly, 464; *Cotton v. Cotton,* 75 Ala. 345.

The opinion of the court was delivered by

REAVIS, J.—The complaint, for cause of action against defendant (respondent), alleges substantially that in 1889 certain residents of Pierce county, at Steilacoom, made a proposal in writing to aid in the construction of a motor railway between Tacoma and Steilacoom. These persons were designated as the parties of the first part, and through certain trustees named as parties of the second part proposed to any company, person, or persons, who

might accept the proposal, and who were designated as parties of the third part, that in consideration of the construction and operation by the parties of the third part of a motor line of railway, the power of which might be steam or electricity, at the option of the third parties, from the city of Tacoma to Steilacoom, the parties of the first part agreed to pay the amounts set opposite their names, either in money, labor, materials, or real estate, as should be specified with each signature contributing toward the building of such railway. The conditions upon which payments were to be made were that the third par-. ties should agree to the acceptance of the subsidy proposal, and, upon compliance with the conditions by the first parties, the third parties were to construct and operate the motor line of railway from Tacoma to Steilacoom, and to commence work of grading on the line of railway within thirty days after the necessary right of way should have been secured, and such line of railway should be completed and in operation within six months from the time it was commenced. The trustees, the parties of the second part, were authorized and empowered to present the proposal for acceptance to any responsible company or person that the trustees should deem responsible for the faithful performance of the contract, and, upon the acceptance of the contract by the third parties, the first parties agreed to execute and deliver to the trustees their several promissory notes, payable one day after date, payable to the third parties for the several sums of money subscribed, and due bills for materials subscribed, specifying the material and labor, and deeds for the real estate subscribed, and the trustees were instructed to deliver to the third parties such notes, due bills, or deeds to real estate, to the amount of one full half of the total thereof when the railway was graded and the ties and iron laid,

the balance to be delivered when the first train was run over the entire line. The trustees were authorized and empowered to grant to the parties of the third part the time necessary to secure the right of way, and such time might be extended by the trustees in their discretion, but the acceptance of the proposal by the third parties should not bind the first parties any longer or greater length of time than the time limited by the trustees, and should not preclude the trustees from contracting with other parties for the construction of the railway after the time limited by the trustees for securing the right of way should expire, and the parties of the third part waived all claims and demands after the expiration of such time fixed by the trustees. In July, 1890, the trustees having been designated, a written acceptance was filed with them by the assignor of plaintiff in the following form:

"I hereby accept the foregoing proposition and bonuses, and agree to construct, equip, and operate a line of electric railway as therein required, on or before Feb. 28, 1891. On behalf of Tacoma and Steilacoom Railway Company.                T. O. Abbott, *President.*"

The defendant's intestate, Saltar, was one of the persons who signed the proposal, and in the following form:

"John Saltar, one thousand ($1,000) dollars, or five lots in Steilacoom, at my option."

About the 9th of February, 1891, the railway company, plaintiff's assignor, performed the conditions on its part to be performed of the terms of the proposal and acceptance, and at the same time duly notified said Saltar in writing of its performance in all the matters and things by it to be performed, and demanded of Saltar that he make the election in the agreement specified, and perform the condition required to be performed on his part. Saltar

neglected to perform such condition and to make his election as to the payment of his subscription, and again about the 6th of October, 1891, a similar further demand in writing was made upon said Saltar, but Saltar neglected to comply with the demand, and wholly failed to perform the condition of the agreement on his part to be performed, and failed to make any election as to the manner of payment of his subscription or to make payment thereof. On the 20th of February, 1899, Saltar died, and the respondent herein was appointed administrator of his estate. On the 8th of August, 1899, the claim for one thousand dollars against the estate of deceased was duly presented to the respondent as administrator thereof, with a claim of legal interest thereon from the 9th day of February, 1891. The claim against the estate was rejected by respondent. Judgment is demanded here for one thousand dollars, together with legal interest from the 9th day of February, 1891. It is also alleged in the complaint that the presentation of the claim on the 8th day of August, 1899, was a reasonable time for presentation of the same, on the performance of the condition on the part of the railway company. A general demurrer was interposed to the complaint by the defendant, and was afterwards, by the permission of the court, withdrawn and another demurrer filed, setting up the additional ground that the action was barred by the statute of limitations. The demurrer setting up the bar of the statute of limitations against the cause of action was sustained, and judgment of dismissal of the action entered thereon.

1. Appellant maintains there was error in the order permitting the filing of the second demurrer setting up the bar of the statute of limitations. It is urged that the

statute authorizing amendments to pleading in further-ance of justice does not vest the court with indiscriminate discretion; that it must always be with a view of the promotion of the equitable considerations which exist be-tween the parties; and it is particularly insisted that the plea of the statute of limitations is not viewed favorably, and several authorities are cited which give color to the contention. But such view of the statute of limitations is not now, we think, usual or supported by the weight of authority. In *Morgan v. Morgan,* 10 Wash. 99 (38 Pac. 1054), this court said:

"Under the weight of the authorities the statute of limi-tations is not, now at least, generally regarded as an un-conscionable defense. We regard this so well settled that we deem a citation of many authorities unnecessary, but refer to *Wood v. Carpenter,* 101 U. S. 135."

It is observed in 13 Enc. Pl. & Pr., p. 209:

"Although according to some authorities the plea of limitation is classed among those not deemed meritorious, yet the statute of limitations is not now generally regarded as an unconscionable defense."

The filing of the amendatory demurrer was within the discretion of the superior court. See *Roche v. Spokane County,* 22 Wash. 121 (60 Pac. 59).

2. It is further maintained that the bar of the statute cannot prevail against the claim, because no date certain is fixed in the contract when the promise of Saltar became enforceable, and therefore, Saltar was entitled to a rea-sonable time after the performance of the consideration by the railway company within which to make the elec-tion of the form of his payment of the subscription which he had reserved to himself; and that even if there was no election reserved to Saltar, and his promise had been simply to pay one thousand dollars, as there is no definite

date fixed the right of action could not accrue to plaintiff until after a reasonable time had elapsed from the time when the railway was actually completed according to the agreement, and that as long as appellant is content to permit the right of election to remain with Saltar he could not complain. But more than a reasonable time had elapsed after it became his duty to make the election. It is also urged that in optional contracts, where the election must be made before a day certain, if the election is not made in the time specified then the right of election passes at once to the other party. And in optional contracts, where the time of election is uncertain and indefinite, then the party reserving the option must exercise his right within a reasonable time; otherwise, the right passes to the other party. But it will be observed the contract specifically provided that the notes and deeds to the real estate and other things mentioned in the subscriptions were to be delivered to the trustees, the parties of the second part, upon the acceptance of the proposal by the railway company, and were to be delivered to the railway company completely when the first train was run over the entire line. The complaint states definitely that the railway company completed its entire line and run its trains over the same on the 9th day of February, 1891. Certainly, under the terms of the contract, the one thousand dollars subscription by Saltar was due and payable at that date, in default of the delivery of the deed to the real estate; that is, Saltar must make his election to pay by deed to the real estate or in money when the terms and conditions of the contract were completely performed by the railway company, on the 9th day of February, 1891, or as soon thereafter as he had notice or demand, and such notice and demand was duly given to him. *Russell v. Mc-*

*Cormick,* 45 Ala. 587 (6 Am. Rep. 707); *Roberts v. Beatty,* 2 Pen. & W. 63 (21 Am. Dec. 420).

It would seem that the obligation of the subscriber as set forth in the contract was to make payment of his subscription upon the completion of the railway. It does not seem that he had the election of the time when he would pay. He must, however, elect at the time what he would pay; and about nine years had elapsed since the accrual of the cause of action.

Upon the facts stated in the complaint, the superior court's ruling upon the demurrer is approved and the judgment affirmed.

DUNBAR, C. J., and FULLERTON and ANDERS, JJ., concur.